**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE**

**CIVIL ACTION NO. 21-28-DLB-EBA**

**JAMES EVERAGE**                                                                                           **PLAINTIFF**

**v.**                              <u>**MEMORANDUM OPINION AND ORDER**</u>

**KENTUCKY STATE TROOPER GAYHEART, et al.**                              **DEFENDANTS**

*** *** *** *** *** ***

**I.     INTRODUCTION**

This matter is before the Court upon Defendants Kentucky State Police Troopers Chadd Daniels, Matthew Gayheart, Nathan Roark, and Bobby Roberts's Motion for Summary Judgment. (Doc. # 60). The Motion has been fully briefed and is therefore ripe for review. For the following reasons, Defendants' Motion for Summary Judgment is **granted**.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

The facts of this case are, by and large, undisputed. On April 8, 2020, a law enforcement officer with a felony warrant for Plaintiff's arrest texted Plaintiff to meet him at a local school in Knott County, Kentucky at 10:00 p.m. under the guise of an offer about a log truck job. (Doc. # 60 at 2). The Defendants intended to arrest Plaintiff after he pulled into the parking lot of the school. (*Id.*). Defendants Matthew Gayheart and Chadd Daniels were in an unmarked vehicle in a driveway off the parking lot, while Defendant Nathan Roark was in a marked Kentucky State Police ("KSP") vehicle behind the school. (*Id.*). Then-Trooper Michael Caudill, who is not a named party in this action, was in a

1

marked KSP vehicle across the road and Sheriff's Deputy Michael Blair, who has since been terminated as a named Defendant, was in a marked Knott County Sheriff's vehicle also across the road. (*Id*. at 3).

When Plaintiff and his wife, who was driving the vehicle, arrived on the scene, Defendant Gayheart directed Defendant Roark to initiate the stop, which Defendant Roark did by pulling up behind Plaintiff's vehicle and activating his blue lights. (*Id*.). Defendants Gayheart and Daniels followed Defendant Roark towards Plaintiff's vehicle as Defendant Gayheart announced that they were State Police and had a warrant for his arrest. (*Id*.). Defendant Gayheart additionally directed Plaintiff to get out of his vehicle. (*Id*.). Rather than comply with Defendant Gayheart's commands, Plaintiff's wife drove the vehicle across the bridge, where she was stopped by Trooper Caudill's vehicle. (*Id*.). Deputy Blair then removed Plaintiff's wife from the vehicle. (*Id*. at 3-4).

With Plaintiff still inside the vehicle, Defendant Gayheart approached the vehicle, gave further commands and identification, and proceeded to strike the passenger side window with his service weapon. (*Id*. at 4). Defendant Gayheart then opened the passenger side door at the same time Plaintiff was moving towards the driver's side of the vehicle, away from Defendant Gayheart. (*Id*.). Defendant Daniels, who was in front of the vehicle, unholstered his taser as Defendant Gayheart grabbed Plaintiff's right arm to pull Plaintiff out of the vehicle. (*Id*.). During this struggle, both Plaintiff and Defendant Gayheart fell out of the vehicle to the pavement, where Plaintiff landed face down with his left arm under his torso. (*Id*.). Plaintiff testified in his deposition that as he fell, there was a steel plank on the bridge that "[took] his head off." (Doc. # 60-2 at 24). At that point, Defendant Gayheart had control of Plaintiff's right arm from when he had grabbed it before

2

the fall and was commanding Plaintiff to give him his left arm as well so he could be handcuffed. (*Id*.). Plaintiff did not do so, at which point Defendant Gayheart made several empty hand strikes to Plaintiff's face. (*Id*. at 4-5).

Plaintiff alleges that at some point during these events "he was beaten by one of the Defendants with a weighted glove."[1] (Doc. # 68 at 1). Plaintiff alleges that upon contact, he asked the Trooper hitting him why he was using a "skull buster" to which the Trooper responded by asking Plaintiff how he knew what a "skull buster" is. (*Id*. at 2). Plaintiff eventually complied with the commands to release his left arm and was subsequently handcuffed, transported to Hazard ARH Regional Medical Center for medical assessments, and then transported to the Kentucky River Regional Jail. (*Id*. at 5; Doc. # 60-3 at 2).

On April 27, 2020, Plaintiff presented to the University of Kentucky Albert B. Chandler Medical Center for an "evaluation of a zygomatic fracture on the right side, status post assault on 04/8/2020." (Doc. # 86-1 at 1). Upon evaluation, medical staff discovered that Plaintiff had a "severely displaced right zygomatic arch fracture" which required surgical repair to reduce the fracture. (*Id*.).

Plaintiff was subsequently charged in Knott County Court with menacing in violation of Kentucky Revised Statute ("KRS") § 508.050 and resisting arrest in violation of KRS § 520.090. (*Id*.; Doc. # 60-3 at 2-3). The menacing charge was dismissed, and

---

[1] It is unclear to which Defendant Plaintiff is referring. In his Reply to Defendants' Motion he states only that he was beaten by *one of* the Trooper Defendants but he also references Defendant Gayheart's state trial testimony denying the use of a weighted glove. (Doc. # 68 at 1-2). Additionally, in his Complaint, Plaintiff alleges that it was Defendant Roberts who "struck him in the face with his fist and 'skull buster'" (Doc. # 1 ¶ 13), but in his Deposition states that he "never did really see his face" in reference to the Trooper who allegedly hit him with a weighted glove. (Doc. # 60-2 at 34-35). For this reason, the Court will refer to Defendants generally when discussing the alleged use of the weighted glove.

3

Plaintiff went to trial on the resisting arrest claim. (Doc. # 60-3 at 3). Plaintiff was ultimately convicted by a jury of resisting the arrest attempted by Defendant Gayheart by "[u]sing any other means creating a substantial risk or causing physical injury to Kentucky State Trooper Matthew Gayheart or another person" and was sentenced to confinement in the County Jail for 90 days. (Doc. # 60-3 at 3-5).

On April 7, 2021, Plaintiff filed the instant Complaint against Kentucky State Police Troopers Matthew Gayheart, Bobby Roberts, Leo Slone, Chadd W. Daniels, and Nathan Roark, as well as Knott County Deputy Sheriffs Michael Blair and Knott County Deputy Robbie Slone.[2] (Doc. # 1). In his Complaint, Plaintiff alleged: (1) violation of constitutional rights under 42 U.S.C. § 1983, (2) conspiracy to violate civil rights, (3) assault and battery, (4) intentional infliction of emotional distress ("IIED"), and (5) negligence.

After discovery had been completed, the Kentucky State Police Trooper Defendants filed the instant Summary Judgment Motion, seeking summary judgment on all of Plaintiff's claims. (Doc. # 60). In his Response to Defendant's summary judgment Motion, Plaintiff voluntarily waived his false imprisonment under § 1983, conspiracy, and negligence claims. (Doc. # 68 at 8). Additionally, Plaintiff "agrees to dismissal of the claim for intentional infliction of emotional distress . . . except in the event Plaintiff's other claims" are barred. (*Id*.).

### III.   ANALYSIS

#### A.   Standard of Review

Defendants move for summary judgment on Plaintiff's claims. (Doc. # 60). Summary judgment is appropriate "if the movant shows that there is no genuine dispute

---

[2] Knott County Deputy Sheriff Michael Blair and Knott County Deputy Robbie are no longer parties in this action.

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).  The movant may do so by "citing to particular parts or materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).  Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  It must produce evidence showing that a genuine factual issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000).  If, after reviewing the record as a whole, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).  Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

**B.     Analysis**

Defendant moves for entry of summary judgment on Plaintiff's claims. (Doc. # 60). In Plaintiff's Response, Plaintiff states he is waiving his claims of false imprisonment in violation of 42 U.S.C. § 1983 (Count I), conspiracy (Count II), and negligence (Count V) claims. (Doc. # 68 at 8). Additionally, Plaintiff "agrees to dismissal of the claim for intentional infliction of emotional distress . . . except in the event Plaintiff's other claims" are barred. (*Id.*). Therefore, Plaintiff's remaining claims include: excessive force in violation of § 1983 (Count I), assault and battery (Count III), and potentially his IIED claim (Count VI). Defendants ask this Court to exercise its supplemental jurisdiction over Plaintiff's state law claims of assault and battery and IIED in analyzing their Motion. (Doc. # 60 at 8). Thus, the Court will first analyze whether it will exercise its supplemental jurisdiction over Plaintiff's various state law claims before it addresses the merits of Defendant's Motion.

   **1.     *Supplemental Jurisdiction***

Supplemental jurisdiction allows a district court to have jurisdiction over a claim that does not satisfy the traditional jurisdictional requirements for federal court. *Watson v. Cartee*, 817 F.3d 299, 303 (6th Cir. 2016). A district court has supplemental jurisdiction over state claims if: (1) the court has subject matter jurisdiction over the federal claim, (2) the state and federal claims derive from a common nucleus of operative fact, and (3) the claims must be such that the plaintiff would ordinarily be expected to try them in one judicial proceeding. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). In other words, a district court has jurisdiction over state claims if they arise from the same case or controversy as claims over which the federal court has original jurisdiction. 28

U.S.C. § 1367(a). Claims are considered to be part of the same case or controversy for the purposes of supplemental jurisdiction "when they derive from a common nucleus of operative facts." *Watson*, 817 F.3d at 303 (quoting *Harper v. AutoAlliance Int'l Inc.*, 392 F.3d 195, 209 (6th Cir. 2004)). In making the determination of whether claims arise from the same nucleus of operative fact, courts will consider whether the claims will "require proof of different facts, will involve different witnesses, and apply different law." *Raymer v. Western & Southern Life Ins. Co.*, No. 5:14-cv-00042, 2013 WL 4875029, at *3 (E.D. Ky. Sept. 11, 2013). "[D]istrict courts have 'broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims,'" but in determining whether supplemental jurisdiction should be exercised, judges should consider "judicial economy, convenience, fairness, and comity." *Pinney Dock & Transport Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (quoting *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996)).

As a preliminary matter, this Court has original jurisdiction over Plaintiff's § 1983 claim. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). Therefore, the question is whether Plaintiff's remaining state claims derive from a common nucleus of operative facts of which the Plaintiff would be expected to try them in the same judicial proceeding. Here, the Court finds that the claims do arise from the same dispute and share a common set of operative facts. Plaintiff's state law claims of assault and battery and IIED are premised on the incident that took place on April 8, 2020. In his Complaint, Plaintiff alleges that Defendant's actions, including, "beating Plaintiff to the extent of causing fractures of his face, beating Plaintiff while handcuffed, tasing Plaintiff and tasing

7

Plaintiff while handcuffed" constitute state law assault and battery. (Doc. # 1 ¶ 44). In his state law claim of IIED, Plaintiff alleges that the "physical abuse of Plaintiff by Defendants was committed in a manner that was extreme, outrageous, and unjustified." (*Id*. ¶ 48). Plaintiff's state law claims mirror his § 1983 claims, where he alleges that the "intentional assault, battery, intentional infliction of emotional distress, unlawful imprisonment and excessive use of physical force upon Plaintiff violated the rights of Plaintiff[.]" (*Id*. ¶ 40). Plaintiff's claims clearly share one set of facts that arise from the same dispute or interaction—the events leading up to Plaintiff's arrest the night of April 8, 2020. Additionally, because Plaintiff would be expected to use similar, if not the same, evidence and witnesses for both the federal and state claims, it would be expected for Plaintiff to try them in the same proceeding. As the events that occurred the night of April 8, 2020, appear to be key to both the state and federal claims, the Court finds that judicial resources are best served by determining the state issues in the same matter. Accordingly, the Court will exercise supplemental jurisdiction over Plaintiff's state claims.

### 2.     *Violation of 42 U.S.C. § 1983 (Count I)*

In his Complaint, Plaintiff alleges that "[t]he intentional assault, battery, intentional infliction of emotional distress, unlawful imprisonment and excessive use of physical force upon Plaintiff violated the rights of Plaintiff as guaranteed by the Fourth and Fourteenth Amendments[3] to the United States Constitution[.]" As a preliminary matter, 42 U.S.C. §

---

[3]     Defendants point out that the Fourteenth Amendment does not apply to Plaintiff's claims regarding the force used during his arrest. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989). In Response, Plaintiff states that "there is no action or claim being made by the Plaintiff against the Defendants" under the Fourteenth Amendment, but rather the Plaintiff mentioned the Fourteenth Amendment "because the [Fourth] [A]mendment protection against unreasonable seizure is in fact made applicable to the states under the [Fourteenth] [A]mendment['s] due

1983 "provides a remedy for deprivations of rights secured by the federal constitution and laws, not state laws." *Saunders v. Valverde*, No. 2:12-cv-238, 2012 WL 2918516, at * 5 (July 17, 2012) (citing *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989)). Assault and battery and IIED are Kentucky torts and "therefore cannot support a § 1983 claim." *Id*. Moreover, Plaintiff conceded his claim of unlawful imprisonment. Therefore, the Court will address Count I solely as a claim of excessive force in violation of 42 U.S.C. § 1983.

In their Motion for Summary Judgment, Defendants argue that Plaintiff's conviction of resisting arrest bars his excessive force claim. (Doc. # 60 at 10). Specifically, Defendants argue that Plaintiff's Fourth Amendment claim is barred by the *Heck* doctrine, which prohibits § 1983 claims if that claim would "necessarily demonstrate[] the invalidity of the conviction." (*Id*. at 11) (quoting *Heck v. Humphrey* 512 U.S. 477, 481 (1994)). Plaintiff disagrees, arguing that his claim for excessive force "does not in any way serve to legally negate or invalidate the misdemeanor conviction for resisting arrest[.]" (Doc. # 68 at 5).

In *Heck*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" and if it would, "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. The Sixth Circuit has recognized two circumstances in which a § 1983 excessive-force claim might conflict with

---

process clause through the incorporation doctrine[.]" (Doc. # 68 at 3). Therefore, to the extent needed, the Court will analyze Plaintiff's claims under a Fourth Amendment standard.

a conviction: (1) the criminal offense includes the absence of excessive force as an element, or (2) excessive force would have served as an affirmative defense in the criminal case but was not raised. *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010); *Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005).

Here, Plaintiff was convicted by a jury of violating KRS § 520.090(b), Kentucky's resisting arrest statute, which prohibits forcibly preventing a peace officer "from effecting an arrest" by using or threatening physical force or by "using any other means creating a substantial risk of causing physical injury." (*See* Doc. # 60-3). As has previously been noted by this Court, Kentucky's resisting arrest statute "does not include the absence of excessive force as an element, and it explicitly forecloses any defense based on the alleged unlawfulness of the arrest itself, so long as the officer was acting in apparent good faith." *Murray v. Jones*, No. 6:20-cv-00082-MAS, 2025 WL 1507011, at *4 (E.D. Ky. May 27, 2025). Therefore, the first *Schreiber* prong does not apply.

The second *Schreiber* prong, however, warrants closer scrutiny. "Under Kentucky law, an individual may claim self-defense to a charge of resisting arrest if the officer used 'unlawful physical force,' meaning more force than was reasonably necessary to effect the arrest." *Id*. (citing KRS § 503.060(1); *Baze v. Parker*, 371 F.3d 310, 327 (6th Cir. 2004)); *see also Burke v. Forbis*, No. 3:18-cv-802-DJH-CHL, 2021 WL 2418574, at * 3 (W.D. Ky. June 14, 2021) ("[R]elevant authority shows that Kentucky law allows a defense to resisting arrest when an officer uses excessive force."). If Plaintiff's accounts were credited, the alleged use of excessive force, specifically the use of a weighted glove, could have served as a defense to his conviction.

10

The Court has reviewed Plaintiff's state trial in its entirety, and Plaintiff did not raise such a defense. As the Sixth Circuit, and district courts within this Circuit, have repeatedly emphasized, where a plaintiff could have raised excessive force as an affirmative defense to a resisting arrest charge but did not, a subsequent § 1983 claim asserting that the force used was excessive would necessarily imply the invalidity of the conviction and is barred by *Heck*. *See Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 616 (6th Cir. 2014); *Cummings*, 418 F.3d at 683-84; *Phillips v. Curtis*, 765 F. App'x. 130, 131-32 (6th Cir. 2019) ("Generally speaking, for example, if an individual is convicted of resisting arrest, that conviction bars claims that the police used excessive force during an arrest. A victory in a damages suit thus would mean that the officer used force improperly, while the conviction for resisting arrest would dictate the opposite conclusion."); *see also Hart by and through Dillon v. Lawson,* No. 6:20-cv-147-REW-CJS, 2024 WL 251147, at * 10 (E.D. Ky. Jan. 23, 2024) ("Because [the plaintiff] could have raised excessive force as a defense, but did not, his claim—insofar as it relates to the particular time of arrest—is barred by his state guilty plea."); *Burke*, 2021 WL 2418574, at * 3 ("Since [the plaintiff's] claim of excessive force 'could have been asserted in criminal court as an affirmative defense' to his charge of resisting arrest, *Heck* bars [the plaintiff's] § 1983 excessive-force claim.").

Plaintiff urges this Court not to apply the *Heck* doctrine for a variety of reasons. First, Plaintiff states that he was not convicted of using or threatening to use physical force or violence but was "convicted for 'using any other means creating a substantial risk of causing physical injury to Kentucky State Trooper Matthew Gayheart or another.'" (Doc. # 68 at 3). This is irrelevant. Plaintiff was convicted of resisting arrest, pursuant to

11

KRS 520.090(1)(b). (Doc. # 60-3 at 2-3). This is plainly stated by Plaintiff in his Response. (*See* Doc. # 68 at 4) ("In this case, Mr. Everage was convicted of resisting arrest."). The language Plaintiff cites is from KRS 520.090(1)(a), which states that a person may be charged with resisting arrest in the case of use of or threatening to use physical force. In *Murray*, the defendant pled guilty to violating KRS 520.090(1)(b). 2025 WL 1507011, at * 4. As a result, the Court found that his "conviction for resisting arrest bars accrual of his excessive force claim to the extent the challenged force was applied during the course of the resistance that formed the basis for that conviction." *Id*. Plaintiff has not pointed this Court in the direction of any case law which has held that a Defendant must be convicted under KRS 520.090(1)(a), as opposed to KRS 520.090(1)(b), for *Heck* to apply. Therefore, that Plaintiff was convicted under 520.090(1)(b), as opposed to 520.090(1)(a), is irrelevant for purposes of our *Heck* analysis.

Second, Plaintiff argues that this Court should not apply the *Heck* doctrine because "[t]he trial court refused to acknowledge this situation as constituting 'passive resistance' which is not actually resisting arrest . . . and instead allowed the prosecution to tell the jury Mr. Everage's actions constituted resisting arrest." (Doc. # 68 at 3). What evidence or language the trial court did or did not allow to come before the jury is not for this Court to consider for purposes of this Motion. Plaintiff was found guilty of and sentenced for resisting arrest. His disagreement with the trial court's various rulings is simply immaterial.

Plaintiff next argues that the resisting arrest statute under which he was convicted, "does not state that the arrest must be lawful in order for person to be convicted of resisting arrest. Thus, lawfulness of the arrest is not an element of the offense or resisting

12

arrest." (*Id*. at 4). Moreover, Plaintiff states that "there is no requirement that the Commonwealth must prove a lack of excessive force by the police at the time of the arrest." (*Id*.). This is true. However, this has also already been addressed by this Court. As previously stated, in Kentucky, neither lack of excessive force nor lawful arrest is an element of resisting arrest, which precludes the Court from applying the first *Schreiber* prong. However, excessive force *is* a defense to resisting arrest in Kentucky, which, as this Court has already discussed, is why the second *Schreiber* prong applies in this case. Any argument Plaintiff may attempt to make on the grounds that lawfulness or excessive force need not be proved in a resisting arrest charge is simply immaterial under the second *Schreiber* prong.

Finally, Plaintiff admits that he did not raise a defense of excessive force during his resisting arrest trial. (*See* Doc. # 68 at 4-5). However, he argues that despite this failure, *Heck* is still not applicable. Specifically, Plaintiff argues that because "there was no evidence presented that Mr. Everage committed any affirmative use of physical force or violence toward the officers at the time of his arrest" there would have been "no justification for Mr. Everage to have raised a defense of excessive force by the officers where there was no claim that Mr. Everage had used force against them." (*Id*. at 5). The Court appreciates Plaintiff elaborating on his trial strategy. However, *why* a plaintiff decides not to raise such an excessive force defense has no bearing on the *Heck* analysis. Rather, the analysis focuses squarely on whether the defense of excessive force *could have* been raised, but was not. As has been acknowledged by this Court, a charge of resisting arrest pursuant to KRS 520.090(1)(b) gives way to a defense of excessive force. Plaintiff did not raise such a defense.

13

Accordingly, Plaintiff's conviction for resisting arrest pursuant to KRS 520.090(1)(b) bars accrual of his excessive force claim to the extent the challenged force was applied during the course of the resistance that formed the basis for that conviction. The United States Supreme Court made it clear that to succeed on a claim of excessive force that would render a conviction invalid, "a 42 U.S.C. § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Plaintiff has not done so here, and thus, his claim "must be dismissed." *Heck*, 512 US. at 487.

Therefore, Defendant's motion for summary judgment as to Count I of Plaintiff's Complaint is **granted**.[4]

### 3.   *State law assault and battery (Count III)*

Defendants next assert that Plaintiff's state law assault and battery claims fail because the force used to effect the arrest was lawful and necessary and therefore bars the assault and battery claims. (Doc. # 60 at 19-20). Additionally, Defendants argue that Plaintiff's resisting arrest conviction precludes his assault and battery claims. (*Id*. at 20). Plaintiff disagrees, arguing that his claims of the Defendants use of a "skull buster" raises genuine issues as to material facts. (Doc. # 68 at 7).

The Court need not address whether there remains a genuine issue of material fact. Plaintiff's state law claims of assault and battery are precluded on the same grounds as his federal excessive force claims. Kentucky law defines assault as an act intending

---

[4]   Because the Court concludes that Plaintiff's § 1983 claim is procedurally barred, the Court need not discuss whether Defendants are entitled to qualified immunity against Plaintiff's federal claims.

to cause a harmful or offensive contact. Moreover, Kentucky law defines battery as "any unlawful touching of the person of another" and in the context of law enforcement an "officer making an arrest may use such force as may be necessary to make the arrest but no more." *Thomas v. Walker*, No. 6:19-cv-226-REW, 2022 WL 989011, at * 11 (E.D. Ky. Mar. 31, 2022) (internal quotations omitted). This non-justified force is often referred to as "excessive force" by the Kentucky Supreme Court. *See Dunn v. Felty*, 226 S.W.3d 68 (Ky. 2007).

As previously discussed in detail (*supra* at III(B)(2)), Kentucky law permits an individual to claim self-defense to a charge of resisting arrest if the officer used more force than was reasonably necessary to effect the arrest. Plaintiff admittedly did not do so. Accordingly, if this Court were to find in favor of Plaintiff on his assault and battery claims, it would mean the officer used force improperly, while Plaintiff's conviction for resisting arrest maintains the opposite conclusion. Numerous district courts in Kentucky have come to the same conclusion that a successful assault or battery claim would necessarily invalidate a conviction of resisting arrest. *See Dobson v. Sandidge*, No. 1:20-cv-00115-GNS, 2021 WL 707657, at * 3 (W.D. Ky. Feb. 23, 2021) (staying the plaintiff's state law claims of assault and battery until her resisting arrest charge was addressed because a favorable judgment on the assault and battery claims could provide a defense to the resisting arrest charge under Kentucky law.); *Lacer v. Pickard*, No. , 2011 WL 2940721, at * 2 (W.D. Ky. July 19, 2011) (staying the case because if the plaintiff was successful on his excessive force, assault, or battery claims "it would undoubtedly impact the prosecution's success" at his resisting arrest trial under KRS § 520.090); *Thomas*, 2022

15

WL 989011, at * 12 (holding that the plaintiff's various state convictions of resisting arrest "would foreclose battery as to the pre-arrest altercation.").

Therefore, Defendant's motion for summary judgment as to Count III of Plaintiff's Complaint is **granted**.

### 4.  IIED (Count IV)

Plaintiff conceded his claim for intentional infliction of emotional distress except "in the event Plaintiff's other claims should be legally barred by the *Heck* doctrine[.]" (Doc. # 68 at 8). In the event such claims were barred, Plaintiff argued that his IIED claim "could remain as a viable claim due to the elimination of his other claims as legal remedies." (*Id*.). Because this Court found that both Plaintiff's federal and state law claims were barred by the *Heck* doctrine, it now turns to his IIED claim.

IIED, also known as the tort of outrage, is typically considered a "gap-filler," meaning that the tort is available when a more traditional tort, such as assault and battery, would not provide an appropriate remedy. *Brewer v. Hillard*, 15 S.W.3d 1, 7-8 (Ky. App. 1999). To prevail on a claim for intentional infliction of emotional distress under Kentucky law, Plaintiff must allege four elements. *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984) (citing *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974)). First, Plaintiff must demonstrate "the wrongdoer's conduct was intentional or reckless." *Id.* Plaintiff can demonstrate this when "the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result." *Id.* Second, the Plaintiff must demonstrate that "the conduct was outrageous and intolerable in that it offends against the generally accepted standard of decency and morality." *Id.* This element is "aimed at limiting

16

frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved." *Id.* Third, Plaintiff must demonstrate that "there was a causal connection between the wrongdoer's conduct and the emotional distress." *Id.* And fourth, Plaintiff must demonstrate that the "emotional distress was severe." *Id.*

Plaintiff has provided this Court with little to no facts that would allow it to conclude that his IIED claim should remain viable. Plaintiff's Response to Defendant's Motion failed to substantively address his state-law claims for intentional infliction of emotional distress or attempt to create a genuine issue of material fact that would warrant the presentation of this claim to the jury. In fact, the entirety of Plaintiff's argument in his Response was that his "emotional distress claim could remain as a viable claim due to the elimination of his other claims as legal remedies." (Doc. # 68 at 8).[5] Therefore, Defendant's motion for summary judgment as to Count IV of Plaintiff's Complaint is **granted**.

Therefore, Defendant's motion for summary judgment as to Count IV of Plaintiff's Complaint is **granted**.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) Defendants' Motion for Summary Judgment (Doc. # 60) is **GRANTED**;

(2) This matter is **STRICKEN** from the Court's docket; and

(3) A **Judgment** in favor of Defendants will be entered contemporaneously herewith.

---

[5] Furthermore, the Court notes that Plaintiff has not elaborated to this Court on how a successful IIED claim, which would require a finding that Defendants had the specific purpose of inflicting emotional distress, would not conflict with his resisting arrest charge, which maintains the conclusion that the officers did not use more force than reasonably necessary to effect Plaintiff's arrest.

17

This 17th day of September, 2025.



Signed By:
*David L. Bunning*
Chief United States District Judge